UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN ROBERTS,

    Petitioner,

-vs-                                                                    Case No.  8:07-CV-1352-T-27TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

    Petitioner, a State of Florida inmate, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his plea-based convictions for armed burglary, armed robbery, and three counts of sexual battery (Dkt. 36). Respondent filed a response to the amended petition (Dkt. 50), and Petitioner filed a reply to the response (Dkt. 52).  Upon consideration of Petitioner's claims, the Court has determined that they either have no merit or are procedurally barred.  Thus, Petitioner's request for federal habeas relief (Dkt. 36) is DENIED.

### Background

    On May 14, 1998, Petitioner was charged by Information with armed robbery, armed burglary, and three counts of sexual battery (Respondent's Ex. 1, Vol. I at pgs. 157-62).  On August 9, 2000, the state trial court found Petitioner incompetent to proceed, and ordered Petitioner involuntarily committed to a treatment facility (Id. at Vol. II at pgs. 218-19).  On March 12, 2001, the state trial court entered an Order Appointing Committee to Re-Evaluate [Petitioner's] Competence to Proceed (Id. at pgs. 229-30).  Following competency re-evaluations and hearings,

the state trial court found Petitioner competent to proceed on November 6, 2001 (Id. at Vol. III at pgs. 448-51).  On February 19, 2002, Petitioner pleaded guilty to the charges (Id. at pgs. 453-70).[1] On April 4, 2002, Petitioner was sentenced to 450 months imprisonment, to be followed by 10 years probation (Id. at pgs. 520-26).

Petitioner appealed.  On December 10, 2003, the appellate court per curiam affirmed Petitioner's judgment of conviction (Respondent's Ex. 5); *Roberts v. State*, 872 So. 2d 908 (Fla. 2d DCA 2003) [table].  Petitioner's motion for rehearing was denied on February 5, 2004 (Respondent's Ex. 7).

On June 21, 2004, Petitioner filed a motion for post-conviction relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 ("3.850 motion") (Respondent's Ex. 9, Vol. II at pgs. 156-96).  On July 19, 2004, the state trial court denied, in part, Petitioner's 3.850 motion, and ordered the State to respond to the remaining claims (Id. at pgs. 197-99).  On March 8, 2005, the state trial court denied all but one of Petitioner's remaining claims (Id. at pgs. 238-40).  Finally, following an evidentiary hearing on Petitioner's remaining claim, the state trial court denied the last remaining claim on May 11, 2005 (Id. at pgs. 273-74).  Petitioner appealed.  On September 27, 2006, the appellate court per curiam affirmed the denial of Petitioner's 3.850 motion (Respondent's Ex. 13); *Roberts v. State*, 939 So. 2d 105 (Fla. 2d DCA 2003) [table].  The appellate court mandate issued on October 18, 2006 (Respondent's Ex. 14).

By then, Petitioner filed a motion to correct illegal sentence pursuant to Florida Rules of Criminal Procedure, Rule 3.800(a) ("3.800 motion") on July 3, 2006 (Respondents Ex. 19).  The state trial court denied the 3.800(a) motion on December 7, 2006 (Respondent's Ex. 20).

---

[1]Petitioner reserved his right to appeal the state trial court's November 6, 2001 competency determination (Id. at pg. 460).

Petitioner appealed.  The appellate court per curiam affirmed the denial of Petitioner's 3.800(a) motion on April 18, 2007 (Respondent's Ex. 22); *Roberts v. State*, 954 So. 2d 34 (Fla. 2d DCA 2007) [table].  The appellate court mandate issued on May 9, 2007 (Respondent's Ex. 23).

By that time, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel on November 21, 2006 (Respondent's Ex. 16).  On December 13, 2006, the state district court denied the petition (Respondent's Ex. 17); *Roberts v. State*, 945 So. 2d 518 (Fla. 2d DCA 2006) [table].

On July 27, 2007, Petitioner constructively filed his federal habeas petition in the instant action (Dkt. 1).[2]  On May 8, 2008, the Court granted Petitioner's motion for the appointment of counsel (Dkt. 26).  On August 26, 2008, counsel for Petitioner filed a Motion for Leave to Amend *Pro Se* Petition (Dkt. 29).  The Court granted the motion (Dkt. 32).  On January 21, 2009, counsel for Petitioner filed an amended petition (Dkt. 36).

### Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).  It is not enough that the federal courts

---

[2]Although the Court received Petitioner's petition on August 2, 2007, a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). It appears that Petitioner delivered his petition to prison officials for mailing on July 27, 2007 (See Dkt. 1 at pg. 1).

believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow

4

circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995)(denying certificate of probable cause)(footnote omitted).

**Ineffective Assistance of Counsel Standard**

The right to counsel provision of the Sixth Amendment provides the accused the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate "that the counsel's performance was deficient" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." It is presumed that a "lawyer is competent to provide the guiding hand that the defendant needs." *United Stales v. Cronic*, 466 U.S. 648, 658 (1984). Thus, "the burden rests on the accused to demonstrate a constitutional violation." *Id*. A defendant is required to prove both prongs of the *Strickland* test. *Id*. at 697. If a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The *Strickland* test is applicable "to ineffective assistance claims arising out of the plea

6

process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To succeed in this claim, "a petitioner must

prove "serious derelictions on the part of counsel sufficient to show that the plea was not, after all,

a knowing and intelligent act." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir.

1985). The first prong requires the petitioner to show that his plea was not voluntary because he

received advice from counsel that "outside the wide range of professionally competent assistance."

*Strickland*, 466 U.S. at 690. The second prong requires the petitioner to show "a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial." *Hill*, 474 U.S. at 59.

**Discussion**

**Ground One**

In Ground One of his amended petition, Petitioner contends that his pleas of guilty were

entered in violation of his substantive and procedural due process right not to be tried and

convicted while incompetent.  Specifically, he asserts that he presented clear and convincing

evidence of his delusional and psychotic behaviors at the time he pleaded guilty.  Further, he

asserts that the state trial court ignored bona fide doubts regarding his competency, and failed to

conduct an adequate hearing to determine his competence.[3]

The conviction of a legally incompetent person violates due process. *Pate v. Robinson*, 383

U.S. 375, 378 (1966).  The test for competency to stand trial or plead guilty is the same: whether a

defendant has sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding and whether defendant has a rational as well as factual understanding of the

proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402 (1960). Petitioner bears the

---

[3]Petitioner does not dispute that the state trial court held a competency hearing (Dkt. 36 at pg. 31).

burden of proving by a preponderance of the evidence that he was incompetent to stand trial or

plead guilty. *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005).

## A. Procedural Due Process Competency Claim

Petitioner raises a procedural due process competency claim. Specifically, Petitioner

asserts that although the state trial court held a competency hearing, it was inadequate. Petitioner

argues that the competency hearing was inadequate because the trial court "relied almost

exclusively on the opinion of competency rendered in a 'stale' report by Dr. Watson, whose last

evaluation of Petitioner Roberts had occurred on January 12, 2001."[4] Petitioner further argues that

in making its competency determination, the trial court relied on Dr. Watson's report and testimony

which concluded that Petitioner was malingering symptoms, while ignoring Dr. Dee and Dr.

McClane's testimony that Petitioner had consistently been prescribed anti-psychotic medications,

and that the tests Dr. Watson gave to Petitioner "did not accurately reflect malingering for the

purpose of determining competency."

Respondent asserts, *inter alia*, that Petitioner's procedural due process competency claim

is unexhausted and procedurally barred (Dkt. 50 at pgs. 9-12). In his reply, Petitioner asserts that

his procedural competency claim is exhausted and not procedurally barred (Dkt. 52 at pgs. 7-8).

The Court agrees with Respondent.

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in

federal court unless he first properly raised the issue in the state courts." *Henderson*, 353 F.3d at

891. "A claim is procedurally defaulted if it has not been exhausted in state court and would now

---

[4]The state trial court held competency hearings on May 11, 2001, August 10, 2001, and September 14, 2001 (Petitioner's Exs. 26-28). Dr. Watson testified at the May 11th hearing; Dr. Dee testified at the August 10th hearing; and Dr. McClane testified at the September 14, 2001 hearing (Id.).

be barred under state procedural rules." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008).  In state court, Petitioner did not present a federal procedural due process competency claim on direct appeal from his conviction (Respondent's Ex. 2).  He did not present the state appellate court with the claim that the trial court's inadequate competency hearing was a violation of his federal procedural due process rights.  *See Duncan*, 513 U.S. at 365 ("exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights").  Instead, he asserted that Dr. Watson's testimony was unauthorized under the Florida Rules of Criminal Procedure (Respondent's Ex. 2).  Thus, Petitioner's procedural due process competency claim is not exhausted for purposes of federal habeas review.

This issue is now procedurally barred from review in the state courts because the state procedural rules do not provide for a second direct appeal. *See Taylor v. McDonough*, 2006 U.S. Dist. LEXIS 68092 (M.D. Fla., Sept. 13, 2006) (unpublished opinion); Fla. R. Crim. P. 3.850(b), (g).  Thus, this Court cannot consider Petitioner's claim unless he can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable.

Petitioner does not present any argument to demonstrate cause or prejudice that would excuse his default. Moreover, he has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Absent such a showing, a federal habeas court should not discuss the merits of a claim that has been procedurally defaulted in state court. *Kight v. Singletary*, 50 F.3d 1539, 1543 (11th Cir.1995)). Accordingly, Petitioner's procedural due process competency claim is procedurally defaulted.

**B. Substantive Due Process Competency Claim[5]**

In *Wright v. Moore*, 278 F.3d 1245 (11ᵗʰ Cir. 2002), the Eleventh Circuit stated that

> "'a petitioner raising a substantive claim of incompetency is entitled to no
> presumption of incompetency and must demonstrate his or her incompetency by a
> preponderance of the evidence.'" *Medina*, 59 F.3d at 1106 (quoting *James v.
> Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992)). Only "[a] petitioner who
> presents clear and convincing evidence creating a real, substantial, and legitimate
> doubt as to his competence to stand trial is entitled to a hearing on his substantive
> competency claim." *Id.* (internal quotation marks and citations omitted). The point
> is that on this claim, "the standard of proof is high and the facts must positively,
> unequivocally, and clearly generate the legitimate doubt" about whether the
> petitioner was mentally competent when he was tried. *Id.* (internal quotation marks,
> brackets, and citation omitted). "Not every manifestation of mental illness
> demonstrates incompetence to stand trial; rather, the evidence must indicate a
> present inability to assist counsel or understand the charges." 59 F.3d at 1107
> (internal quotation marks, brackets, and citations omitted).

*Id.* at 1259.  "A presumption of correctness attaches to a state court's finding of competence and a

federal habeas court must determine that the finding is not 'fairly supported by the record' before it

may overturn a state courts' decision." *Medina*, 59 F.3d at 1106 (quoting *Maggio v. Fulford*, 462

U.S. 111, 117 (1983)).

After consideration of the record, the Court concludes that the state court's finding that

Petitioner was competent is "fairly supported by the record," and Petitioner has failed to create a

legitimate and substantial doubt regarding his competency at the time that he entered his plea.  A

review of the testimony presented during the competency hearings, and the medical experts'

reports regarding Petitioner's competency, demonstrates that the state court's conclusion that

Petitioner was competent to proceed is fairly supported by the record.

---

[5]Petitioner did not raise a substantive due process competency claim in state court.  Respondent concedes, however, that such claims generally cannot be defaulted (Dkt. 50 at p. 22).  *See Wright v. Secretary for Dept. of Corrections*, 278 F.3d 1245, 1258-59 (11th Cir. 2002); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11ᵗʰ Cir. 1995).  Because there is no state court decision on the merits, the Court will make a de novo review of this claim.

Petitioner presented two experts, Dr. Dee and Dr. McClane, who had examined him and rendered opinions that he was not competent to stand trial. Dr. Dee testified that Petitioner "was incompetent as a result of a delusional disorder..." (Id. at p. 243). The delusion Petitioner suffered was that his attorneys and all those involved in the legal system were involved in a joint conspiracy against him (Id. at p. 278; Petitioner's Ex. 25). Petitioner also told Dr. Dee that the plot against him was being carried out by the "Illuminetti Society" which is a secret association of white people who persecute black people (Id. at p. 247; Petitioner's Ex. 25). Dr. Dee was "absolutely convinced" that Petitioner was incompetent to proceed with trial (Respondent's Ex. 1, Vol. II at p. 278). On cross examination, however, Dr. Dee admitted that Petitioner's performance on the MMPI-2 test probably indicated that Petitioner was "faking bad." (Id. at p. 294). Dr. Dee testified that "faking bad" is "malingering, making yourself seem more impaired than you are." (Id. at p. 295). His April 15, 2001 report indicated that Petitioner's performance on the MMPI-2 test "may well have represented some attempt to make himself seem much worse and/or a plea for help." (Petitioner's Ex. 25). On cross examination, Dr. Dee testified that he could not "vouch for [Petitioner's] truthfulness about everything. I think he believes a certain amount of it, and I certainly would grant that there are times that he seems to be malingering." (Respondent's Ex. 1, Vol. II at p. 309).

Dr. McClane testified that Petitioner suffered from a psychotic disorder (Respondents' Ex. 1, Vol. II at p. 334). Although it was Dr. McClane's opinion that Petitioner was not competent to proceed to trial, he testified:

> I don't hold that opinion with quite as much confidence because I believe he's probably malingering some of his symptoms. And since he's malingering some, one have [sic] to be a little more skeptical of the core symptoms that he's had all along of the delusions about the entire legal system, and he brings into that the mental health system as it impacts the legal system.

11

(Id. at p. 343).

Dr. McClane testified that Petitioner was able to appreciate: 1) the charges against him; 2) the range and nature of the possible penalties; and 3) the adversarial legal process (Id. at pp. 346-47). He testified, however, that Petitioner's delusions that "nobody in the [legal] system is trustworthy...[a]nd the doctors and the defense attorneys and the prosecutors and the judge are all in cahoots against him..." "are such as to warp his judgment in assisting his attorney, in trusting his attorney, in sifting data for possible plea negotiations, these kinds of things..." (Id.).  When asked "But for some reason you believe [Petitioner is] telling the truth about his delusional order[?]..." Dr. McClane responded, "I believe so.  But as I said earlier, I believe so a little less strongly now that I have the testing, the data." (Id. at p. 350).  Dr. McClane, who only saw Petitioner in a clinical setting, admitted that if he suspected a patient was not telling the truth about his delusional beliefs, he would want to see the patient in a "non-clinical setting[.]" (Id. at p. 366).

When questioned by the state court, Dr. McClane testified that when he met with Petitioner, Petitioner was able to communicate to him a coherent version of the facts relating to the crimes (Id. at p. 376).  He was not sure, however, whether Petitioner could communicate the same facts to his attorney because "of his thorough distrust of every attorney that he's dealt with." (Id. at pp. 376-77).

Dr. McClane's September 11, 2001 report regarding his evaluation of Petitioner indicated that he believed Petitioner had a delusional disorder, but was also malingering some of his symptoms (Petitioner's Ex. 24).  Dr. McClane could not, however, "completely rule out the possibility that [Petitioner] could be malingering all of his symptoms." (Id.).  His report also indicated that Petitioner "still appears to have a Delusional Disorder, but his descriptions of the hallucinations are exceedingly unusual for Schizophrenia or a Delusional Disorder, and he may be

malingering them." (Id.).  Dr. McClane concluded that Petitioner's "competence is still very questionable because of his apparent delusions regarding the criminal justice system."  (Id.).

The State called Dr. Glen Watson, a forensic psychologist at Florida State Hospital where Petitioner was committed for six and one-half months (Respondent's Ex. 1, Vol. IV at pp. 571-656).  During Petitioner's stay at Florida State Hospital, Dr. Watson observed Petitioner "on a casual basis" almost every day (Id. at p. 591).  He also met with Petitioner once a week in the "competency training groups." (Id.).  Finally, he met with Petitioner once a month for formal evaluations (Id.).  Dr. Watson concluded that Petitioner did not have " a major mental illness that would render him incapable of proceeding to trial."  (Id. at p. 592).  Dr. Watson reached this conclusion because: 1) the staff at the hospital reported that Petitioner did not exhibit any bizarre behavior; 2) the symptoms he was reporting to Dr. Watson during their formal meetings, memory loss and hallucinations for example, were wholly inconsistent with his behavior at the hospital; and 3) the tests conducted on Petitioner indicated that he was malingering (Id. at pp. 592-605).  Petitioner was sent for a CT scan and EEG, and those tests were negative for any brain damage (Id. at p. 616).  In his January 19, 2001 report, Dr. Watson concluded that Petitioner did understand the proceedings against him, and could "converse with his attorney and help in his own defense." (Petitioner's Ex. 20).

The record reflects that all three medical experts indicated that Petitioner had a factual understanding of the proceedings against him.  Dr. Dee, however, did not believe Petitioner was competent to proceed because he had a delusional disorder regarding the legal system that

13

prevented him from assisting his attorney.[6] Dr. Watson concluded that Petitioner did have a factual understanding of the proceedings, could consult with his attorney and help in his own defense, and was malingering his symptoms.  Dr. McClane concluded that Petitioner's competence was "very questionable because of his apparent delusions regarding the criminal justice system."  Dr. McClane, however, believed Petitioner was "malingering some of his symptoms," could not rule out that Petitioner was "malingering all of his symptoms," and did not have "much confidence" in his opinion that Petitioner was not competent to proceed (Respondents' Ex. 1, Vol. II at p. 343).

Although the experts differed in their opinions, the record does not raise a substantial or legitimate doubt that the state court's determination that Petitioner was competent to proceed was unreasonable.  Further, Petitioner has not presented any evidence that during the plea and sentencing hearings he exhibited any abnormal behavior, did not understand the proceedings, or was unable to assist his attorney.  *See Wright*, 278 F.3d at 1259 ("The best evidence of Wright's mental state at the time of trial [the only time that counts] is the evidence of his behavior around that time, especially the evidence of how he related to and communicated with others then.").  The transcripts of those hearings reflect that Petitioner expressed himself clearly and coherently, expressed remorse for his crimes, and appropriately responded to the court's questions[7]

---

[6]The Court notes that the mere fact Petitioner was diagnosed with a mental illness is not enough to establish that he was incompetent when he entered his plea. *See Bolius v. Wainwright*, 597 F.2d 986, 990 (5th Cir. 1979) ("[T]he mere presence of mental illness or other mental disability at the time (the defendant) entered his plea does not necessarily mean that he was incompetent to plead under the *Dusky* test."). Further, "[t]reatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial." *Baker v. Sec'y Dep't of Corrections*, 2007 U.S. Dist. LEXIS 25084, at *11 (M.D. Fla. Apr. 4, 2007)(unpublished) (citing *Sheley v. Singletary*, 955 F.2d 1434, 1439 (11th Cir. 1992) (concluding that a "bare allegation of the level of psychotropic drugs administered to petitioner before entering his plea" is not sufficient to demonstrate incompetence to enter a plea).

[7]The Court notes that when the state court asked if his "medications help you in understanding what's going on around you", the Petitioner responded that, "They do." (Respondent's Ex. 1, Vol. III at pg. 464).  Petitioner also responded "yes" when asked if he understood "what's going on" and if he felt that he knew what he was doing. (Id.). During the sentencing hearing, Petitioner stated that "I take my medication voluntary [sic], and it has a stabilizing

(Respondent's Ex. 1, Vol. III at pgs. 453-470; 497-99).

In sum, the record fairly supports the state courts' determination that Petitioner was competent to proceed. The record also supports the conclusion that Petitioner was competent at the time he entered his plea. Petitioner's substantive due process competency claim, therefore, fails on the merits.

**Ground Two**

In Ground Two, Petitioner raises three claims of ineffective assistance of counsel: 1) counsel was ineffective in failing to adequately investigate and present Petitioner's mental health and competency issues; 2) counsel was ineffective in failing to investigate and advise Petitioner that he had a defense of involuntary intoxication; and 3) counsel was ineffective in failing to raise a double jeopardy objection to the three sexual battery charges, and in advising Petitioner to plead guilty to all three, rather than one, of the sexual battery charges.

Initially, Ground Two must be denied as barred by entry of Petitioner's voluntary guilty plea. It is well-established state and federal law that guilty or nolo contendere pleas waive all but jurisdictional claims up to the time of the plea. *See United States v. Broce*, 488 U.S. 563 (1989)(when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)(holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process).

The waiver by plea includes claims of ineffective assistance which do not implicate the validity of the plea. *See Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea

---

ability, and it does work. It helps me to think clear, and patiently." (Id. at pg. 499).

ineffectiveness waived); *Matthew v. Johnson*, 201 F. 3d 353, 364 (5th Cir. 2000) (noting longstanding rule that valid guilty plea bars habeas review of non-jurisdictional claims alleging antecedent violations of constitutional rights). By entering a voluntary guilty or no contest plea, a defendant relinquishes the right to a jury trial, to assistance of counsel, to raise a defense, and to confront his or her accusers. *See Broce*, 488 U.S. at 573 (1989) (relinquishment derived not from inquiry into defendant's subjective understanding of range of potential defenses, but from admissions necessarily made upon entry of voluntary guilty plea). In the instant case, Ground Two concerns complaints about trial counsel's preplea performance. By entry of his voluntary guilty plea, Petitioner relinquished any right he may have had to challenge the effectiveness of counsel regarding alleged antecedent violations of constitutional rights.

In any event, even if not waived by the entry of the plea, Petitioner would not be entitled to habeas corpus relief on his ineffective assistance of counsel claims.

## A. Failure to Investigate Mental Health and Competency Issues

Petitioner specifically asserts that counsel was ineffective in failing to provide the experts who examined Petitioner with sufficient information regarding his mental health and prescription medication history.  He also complains counsel was ineffective in failing to interview or elicit testimony from the psychiatrist who prescribed psycho tropic medicine to him during his stay at Florida State Hospital.  Petitioner asserts that but for his counsel's ineffectiveness, he would have been found incompetent to proceed, or would have been able to pursue mental health defenses at trial.

Respondent initially asserts that this is a new claim that was not raised in Petitioner's original federal habeas petition, and that the claim is time-barred.  The Court agrees.

The statute of limitations that governs the filing of Petitioner's petition and amended

petition is set forth at 28 U.S.C. § 2244(d), which provides in relevant part as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Petitioner's state conviction was final on May 6, 2004 (ninety days after the appellate court denied Petitioner's motion for rehearing on direct appeal). *See Chavers v. Sec'y Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006). A period of 45 days elapsed which was not tolled before he filed his rule 3.850 motion on June 21, 2004. Due to Petitioner's collateral filings, which tolled the running of the federal limitations period until the appellate court mandate issued on the denial of Petitioner's Rule 3.800 motion (see Respondent's Ex. 23), the one-year federal limitations period did not actually start again until May 10, 2007. Consequently, on July 27, 2007, when Petitioner filed his original § 2254 Petition (Dkt. 1), the federal limitations period had run for only 93 days.

However, it was not until January 21, 2009, that Petitioner's claim that counsel was ineffective in failing to adequately investigate his mental health and competency issues was first raised in his amended petition (Dkt. 36). This was well after the federal limitations period expired, and, unless it relates back to the original petition, the claim is untimely.[8] See Fed. R. Civ. P. 15(c).

---

[8]The filing of Petitioner's original petition does not toll the one-year limitations period. *Duncan v. Walker*, 533 U.S. 167, 172 (2001).

Respondent submits that this new ground for relief does not relate back to the other grounds for relief identified in the petition. The Court agrees.

Fed. R. Civ. P. 15(c)(2) provides in pertinent part that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." The terms "conduct, transaction, or occurrence" are to be narrowly construed and are not synonymous with "trial, conviction, or sentence." *See Mayle v. Felix*, 545 U.S. 644, 660-664 (2005). As the *Mayle* decision makes clear, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." 545 U.S. at 659. In other words, in order for the claims in an amended petition to relate back, they must be of the same "time and type" as those in the original petition such that they arise from the same "core of operative facts." *Id*. at 650, 657 (citation omitted). An amendment which states an entirely new claim for relief based on different facts will not relate back. *See Dean v. United States,* 278 F.3d 1218, 1222 (11th Cir. 2002) (citing *Forzley v. AVCO*, 826 F.2d 974, 981 (11th Cir. 1987)). Rule 15(c)(2) is "to be used for a relatively narrow purpose" and is not intended "to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003).

Having compared the claims Petitioner presented in the original petition with those presented in the amended petition, the Court concludes that Petitioner is not entitled to the benefit of Rule 15(c)'s relation back provisions as to his claims that counsel was ineffective in failing to present the experts with sufficient information regarding Petitioner's mental health and prescription medication history, and in failing to interview or elicit testimony from the psychiatrist who prescribed Petitioner medicine at Florida State Hospital. To allow Petitioner to assert new claims

after the statutory limitations period has expired would defeat the purpose of AEDPA to expedite federal habeas review.

Nevertheless, the AEDPA's limitations period may be equitably tolled when a movant's timely filing of a petition is impeded by extraordinary circumstances beyond his control and unavoidable even with due diligence. *See Helton v. Secretary for Dept. of Corrections*, 259 F.3d 1310, 1312 (11th Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."), *cert. denied*, 535 U.S. 1080 (2002). Petitioner has not demonstrated extraordinary circumstances beyond his control, nor has he demonstrated due diligence arising from the failure to promptly pursue this claim. *See Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 702, n.7 (11th Cir. 2004). Thus, this claim is time-barred.

Moreover, this claim is unexhausted and procedurally barred. Petitioner did not raise this claim in his state Rule 3.850 post-conviction motion (see Respondent's Ex. 9, Vol. II at pp. 156-96). Petitioner's claim is now procedurally barred in state court by the two-year limitation of Rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. *E.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Accordingly, since Petitioner has failed to exhaust state remedies that are no longer available, the failure is a procedural default which bars federal review of this claim. Petitioner has not alleged nor demonstrated cause and prejudice for his default, or that review of this claim is necessary to correct a fundamental miscarriage of justice.

**B. Failure to Investigate and Advise Petitioner Regarding Involuntary Intoxication Defense**

In his amended petition, Petitioner asserts that he told his attorney that he was under the influence of the prescription medication Zoloft at the time he committed the crimes. Petitioner also asserts that his attorney was familiar with his prior mental health history. Therefore, he complains that counsel was ineffective in failing to investigate involuntary intoxication as a possible defense.

Initially, this claim is unexhausted and procedurally barred. In his amended federal habeas petition, Petitioner asserts counsel was ineffective in failing to investigate an "involuntary" intoxication defense. He essentially complains that the use of his prescribed medication Zoloft rendered him "involuntarily intoxicated" at the time of the crimes. In his state Rule 3.850 post-conviction motion, however, Petitioner's claim was that counsel failed to investigate a "voluntary intoxication/insanity" defense (Respondent's Ex. 9, Vol. II at p. 160). There, he asserted that at the time of the crimes he was under the influence of Zoloft, crack cocaine, and alcohol (Id.). During the state court evidentiary hearing on Petitioner's claim, the only issue that was addressed was counsel's failure to investigate and advise Petitioner of a voluntary intoxication defense (Id. at pgs. 241-71). Thus, Petitioner only presented the state court with the claim that counsel was ineffective in failing to investigate and advise him of the availability of a "voluntary intoxication/insanity" defense.[9]

Petitioner did not present the state court with the claim he now raises in his amended federal habeas petition, i.e., counsel was ineffective in failing to investigate an involuntary intoxication defense. *See Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas

---

[9]Counsel's failure to raise an involuntary intoxication defense is clearly a separate and distinct claim from the claim that counsel failed to raise a voluntary intoxication/insanity defense. *See, e.g., Barrett v. State*, 2 So. 3d 370, 371 (Fla. 4th DCA 2008) ("While the insanity defense may subsume the involuntary intoxication defense, the defenses are not the same.").

relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."). Accordingly, since Petitioner has failed to exhaust state remedies that are no longer available, the failure is a procedural default which bars federal review of this claim. Petitioner has not alleged nor demonstrated cause and prejudice for his default, or that review of this claim is necessary to correct a fundamental miscarriage of justice.

Regardless, even if Petitioner's claim was not procedurally barred, it would fail on the merits. In Florida, where the intoxicating dose of prescription medication has been prescribed or administered by a physician, any resulting intoxication is considered to be involuntary. *See Sluyter v. State*, 941 So.2d 1178, 1180-81 (Fla. 2d DCA 2006). There is no indication in the record that Petitioner's alleged involuntary intoxication at the time of the crimes was caused by Petitioner taking Zoloft as prescribed by a physician. To the contrary, during the state evidentiary hearing on Petitioner's Rule 3.850 claim, Petitioner testified that he was intoxicated at the time of the crimes because he "was using crack cocaine, marijuana,...liquor, alcohol..." (Respondent's Ex. 9, Vol. II at pg. 250).[10] Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his petition to be of probative value. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)(a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'")(citation omitted)). Thus, there is no record support for an involuntary intoxication defense. Consequently, Petitioner cannot demonstrate counsel was ineffective in failing to investigate or advise him of the availability of an involuntary intoxication

---

[10]During the sentencing hearing, Petitioner admitted he committed the crimes, but asked for mercy from the court because "drugs, alcohol - messed me up" and "[y]ou just don't think straight when you're on dope - on drugs." (Respondent's Ex. 1, Vol. III at pg. 498).

defense.  Accordingly, the claim fails on the merits.

**C. Failure to Object to Double Jeopardy Violation**

Petitioner asserts counsel was ineffective in failing to assert a double jeopardy objection to the three charges of sexual battery, and in advising Petitioner to plead guilty to three counts of sexual battery.  Because, as explained *infra*, there was no double jeopardy violation, Petitioner cannot establish counsel was deficient in failing to raise a double jeopardy objection.  Accordingly, this claim fails on the merits.

**Ground Three**

In Ground Three, Petitioner claims that his convictions and sentences for the three counts of sexual battery violated the Double Jeopardy Clause, which prohibits multiple convictions for the same offense, because his acts occurred in a single continuous criminal episode.[11]  The record, however, shows that the acts he committed were separate acts not barred by double jeopardy.

The Information charged Petitioner with, *inter alia*, three counts of sexual battery (Respondent's Ex. 1, Vol. I at pgs. 157-62).  Two of the charges were for Petitioner putting his penis in the victim's vagina (Id.).  The other charge was for Petitioner putting his penis in the victim's mouth (Id.).  The victim's deposition shows that Petitioner initially came into the victim's bedroom, put a knife to the victim's throat while she was lying in her bed, and put his penis into her vagina (Petitioner's Ex. 39).  After that, he got off the bed, stood in front of the victim, and put his penis in her mouth (Id.).  Then, Petitioner stopped, made the victim stand beside and lean on the bed, and he put his penis into the victim's vagina (Id.).  Thus, the victim's testimony clearly established that three separate acts had occurred.

---

[11]Petitioner raised this claim in his state Rule 3.850 post-conviction motion (Respondent's Ex. 9, Vol. II at pgs. 156-96).  The state trial court denied the claim in two separate orders (Id. at pgs. 197-99; 238-40).

Florida's Fourth District Court of Appeal has explained, "[i]n determining what qualifies as a distinct act for purposes of deciding whether multiple acts can be charged in a single count, the spatial and temporal aspects of the multiple occurrences must be analyzed in order to determine whether the defendant had time to pause, reflect, and form a new criminal intent between the occurrences." *Binns v. State*, 979 So. 2d 439, 442 (Fla. 4th DCA 2008) (quoting *Eaddy v. State*, 789 So. 2d 1093, 1095 (Fla. 4th DCA 2001)). The court record indicates that the offenses were distinct acts and that Petitioner had time to pause, reflect, and form a new criminal intent between each occurrence. *See Diaz v. Sec'y for the Dep't of Corr.*, 313 Fed. Appx. 262 (11th Cir. Fla. 2009) (unpublished opinion) (Under Florida law, two separate attempts at vaginal penetration, separated by an intervening anal penetration attempt, qualified as two different sexual batteries. Therefore, multiple sentences did not violate double jeopardy.). *See also, Williams v. Singletary*, 78 F.3d 1510, 1512-1514 (11th Cir. 1996) ("The Double Jeopardy Clause does not prohibit cumulative punishments for a single incidence of criminal behavior when the legislature clearly intends to prescribe cumulative punishments.").

Moreover, "[d]istinct acts of sexual battery do not require a 'temporal break' between them to constitute separate crimes." *State v. Meshell*, 2 So. 3d 132, 134 (Fla. 2009). "[S]exual acts of a separate character and type requiring different elements of proof, such as those proscribed in the sexual battery statute, are distinct criminal acts that the Florida Legislature has decided warrant multiple punishments." *Id.* at 135. Petitioner's act of putting his penis in the victim's vagina is a distinct act from his putting his penis in her mouth. Thus, multiple punishments were warranted.

The state trial court's denial of Petitioner's double jeopardy claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, nor result in a decision that was based on an unreasonable determination of the

facts. Accordingly, Ground Three does not warrant federal habeas relief.

**Conclusion**

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Amended Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 36).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma*

*pauperis.*

**DONE and ORDERED** in Tampa, Florida, on ⟨September 10th⟩, 2010.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Counsel of Record

25